# Hennessy *against* The Western Bank.

J. K. and J. B. executed a deed under seal, which purported to be an assignment by J. K., J. B. and J. A. K., under the firm of K., B. & Co., " J. A. K. being absent, and acting by his attorney duly appointed," of all their estates, joint and separate, for the payment of partnership and separate debts. After certain preferences, it provided for the payment of all other partnership and separate debts *pro ratâ*, stipulating for a release within 3 months by residents in the United States, and within 9 months by residents elsewhere. It empowered the assignees to appoint agents or attorneys, and dismiss or revoke them at pleasure, and exempted the assignees from liability for effects not actually coming to their hands, and for losses or defaults arising from the misconduct of agents, unless in cases of wilful neglect of duty, or want of proper care on the part of

[Hennessy v. The Western Bank.]

the assignees. The schedule appended, specified various real and personal estate of the firm, and of J. K. and J. B. individually. The only separate property of J. A. K., mentioned in the deed, was a pew in the 10th Presbyterian Church.

*Held* 1. That the execution of the deed by only two of the firm, followed by a delivery, did not invalidate the assignment.

2. That as it stipulated for a release, it was not valid without containing a transfer of the separate property of each of the partners; though it might not appear affirmatively, that J. A. K., who omitted to execute the deed, had separate property.

3. That the power to the assignees to appoint and dismiss agents, &c., was proper, and they would have this authority without such provision.

4. That the exemption of the assignees from liability for effects that should not come to their hands, and for losses, &c. from the misconduct of agents, &c., did not alter their responsibility.

5. That the clause giving time for a release was proper.

ERROR to the District Court for the city and county of *Philadelphia.*

The plaintiffs, Hennessy and others, had obtained a judgment against John Knox, James Boggs and James A. Knox, trading as Knox, Boggs & Co., and issued an attachment of execution, which was levied on funds in the hands of the Western Bank of Philadelphia, deposited there by William Wilson and David Knox, assignees of Knox, Boggs & Co., or their attorney. These funds were assets, or proceeds of assets, of the firm of Knox & Boggs (consisting of John Knox and James Boggs), and Knox, Boggs & Co. (consisting of John Knox, James Boggs and James A. Knox), or one of them; and at the time the attachment was served, they amounted to the sum of $7875.25. On the trial of the plea of *nulla bona,* in the court below, the plaintiffs alleged that the assignment was, on its face, insufficient to transfer the property of Knox, Boggs & Co., as against their creditors. The court, however, ordered a nonsuit, on the ground that property fraudulently assigned was not attachable under the Act of 1836, in the hands of fraudulent assignees, and sealed a bill of exception taken by the plaintiffs. The question in this court was on the validity of the assignment, the point on which the court below ordered the nonsuit, having since been decided otherwise in *Stewart* v. *M'Minn,* (5 *Watts & Serg.* 100).

The following was the assignment referred to:

This Indenture, made the 10th day of May, in the year 1837, between John Knox, merchant, and Mary Ann, his wife, James Boggs, merchant, and Caroline, his wife, and James A. Knox, merchant, all of the city of Philadelphia, the said James A. Knox being now absent and acting by his attorney duly constituted and appointed, of the one part, and William Wilson and David Knox, of the same city, merchants, of the other part: Whereas the said John Knox and James Boggs, lately trading under the firm of Knox & Boggs, and the said John Knox, James Boggs and James A. Knox, trading together under the firm of Knox, Boggs and

Company, are justly indebted, &c., and are therefore desirous of making such a disposition of their property as to produce the most that can be realized therefrom, to be promptly and justly distributed among their creditors.

Now in order to effect the purposes aforesaid, This Indenture witnesseth, that the said John Knox and Mary Ann his wife, James Boggs and Caroline his wife, and James A. Knox, in consideration as well of the premises as of ten dollars to them in hand paid, &c., have granted, &c., and hereby do grant, &c., unto the said William Wilson and David Knox, and the survivor of them, and the heirs, executors, administrators and assigns of such survivor, all the estates joint and separate, real, personal and mixed, of them the said John Knox and wife, James Boggs and wife, and James A. Knox, or any or either of them; viz. All their real estates, stock, goods, wares, merchandise, bills, bonds, notes of hand, book accounts, debts, claims, demands, choses in action, and other personal and partnership property of every name, nature and description, whether held and standing in the names of the said John Knox, James Boggs and James A. Knox jointly or in common, or in the names of any or either of them, or of either of said firms; a schedule whereof, as nearly and fully as can now [be] conveniently made out, is hereunto annexed, marked A; which schedule is hereby referred to and made a part of this indenture; together with all and singular the buildings, &c., hereditaments and appurtenances whatsoever thereunto belonging or in any wise appertaining, and the reversions and remainders, &c., and all the estate, right, title, interest, property, claim and demand whatsoever, of them the said John Knox and Mary Ann, ——, James Boggs and Caroline his wife, and James A. Knox, either at law or in equity, of, in, to or out of the same: To have and to hold the same, and every part thereof, to them the said William Wilson and David Knox, and to the survivor of them, and to the heirs, executors, administrators and assigns of such survivor, for and upon the following trusts, intents and purposes, and for and upon no other trusts, intents and purposes whatever; that is to say—

In trust, to proceed as soon as conveniently may be, at such times and in such manner however as may be in their opinion most for the interest of all concerned, to sell and dispose of all the estates, joint and separate, real and personal, of every nature and description hereby conveyed, or intended so to be, &c., and upon such sale or disposition, good and sufficient deeds, &c., to make, &c., and also to collect and realize the most that may be practicable from all bills, &c.

And upon this further trust, that the said William Wilson and David Knox, in order to facilitate and hasten the accomplishment of the objects and purposes of this assignment, shall and may have full power to appoint, and employ according to their discre-

tion, one or more agents or attorneys under them, with full or limited powers, and the same at pleasure to dismiss and revoke.

And upon this further trust, in the first place, from and out of the collections and receipts from the estates, real and personal, joint and separate, hereby conveyed or intended so to be, to pay all just and reasonable expenses, &c.

And upon this further trust, in the second place, from and out of the proceeds of the separate estates hereby assigned, or intended so to be, to pay off, satisfy and discharge all the debts due by them the said John Knox, James Boggs and James A. Knox, respectively, for house-rent, household and family expenses, and servants' wages.

And upon this further trust, in the third place, out of the residue of the joint and separate estates hereby assigned, to pay off and discharge in full, both principal and interest, all debts, balances and sums of money due by the said Knox & Boggs, or Knox, Boggs & Co., or for which they are in any way liable or responsible to the several persons and mercantile firms named and mentioned in the annexed schedule marked B, Class No. 1, &c.

And upon this further trust, after the payment in full of the above-mentioned debts, liabilities and responsibilities, then in the fourth place, out of the residue of said estates, to pay off and discharge in full of both principal and interest, all debts, balances and sums of money due or to become due by the said Knox & Boggs, or Knox, Boggs & Co., or for which they are liable or responsible, to the several persons named and mentioned in the said schedule hereunto annexed marked B, and designated therein as Class No. 2, &c.

And upon this further trust, after the payment in full of the above-mentioned debts, liabilities and responsibilities, then in the fifth place, out of the residue of said estates, to pay off and discharge, in full of principal and interest, all notes, acceptances, drafts and endorsements, debts, balances and sums of money, due or to become due by the said Knox & Boggs, or by Knox, Boggs & Co., or for which they are or may be liable or responsible, to the several persons and mercantile firms named and mentioned in the said schedule hereunto annexed marked B, and designated therein as Class No. 3, &c.

And upon this further trust, after the payment in full of all the above-mentioned debts, liabilities and responsibilities, then in the sixth place, out of the residue of such estates to pay off and discharge in full of both principal and interest all notes, acceptances, balances of account, and all other claims and demands whatever, due or to become due by the said Knox & Boggs, or Knox, Boggs & Co., or for which they are, or may become liable or responsible unto the persons and mercantile firms in the said schedule B, hereunto annexed, named and designated therein as Class No. 4, &c.

And upon this further trust, that after the payment in full of

[Hennessy v. The Western Bank.]

all the debts, liabilities and responsibilities above-mentioned, in the seventh place, out of the residue of the said estates, to pay off and discharge all other partnership or separate debts, liabilities and responsibilities of every nature and description whatsoever of them the said John Knox, James Boggs and James A. Knox now due and owing or hereafter to fall due to any person or persons, mercantile firms or corporations whatever, &c. And provided further, that no such person or persons, mercantile firms or corporations in this last clause referred to, shall be entitled to ask, demand or receive from the said William Wilson and David Knox, or the survivor of them, or the heirs, executors, administrators or assigns of such survivor, any share, dividend or payment under and by virtue of the provisions of this last clause of this indenture, unless he or they respectively shall and do, if resident within the United States within three months, and if resident without the United States within nine months, execute and deliver in favour of the said John Knox, James Boggs, and James A. Knox, and of each and every of them, and of their executors and administrators respectively, a full, absolute and effectual release of all debts, dues, claims and demands upon them, and upon each, and all of them, reserving howsoever, if need be, his, her or their claim upon any party or parties (other than the said John Knox, James Boggs and James A. Knox) to the contract or engagement if any holden by the said creditor or creditors. Provided always, that in no case under this assignment, shall the joint or separate estates of either one of the said partners be applied to the payments of debts of the other partners is not liable or responsible.

And as to all the rest, residue and remainder of the said trust estate, if any there be after settlement in full of all debts, liabilities, and responsibilities of every kind, principal and interest as above directed—

In trust, to pay over the same to the said John Knox, James Boggs and James A. Knox, their respective heirs, executors, administrators and assigns, in such shares and proportions as they may be entitled thereto. And for the better to enable the said William Wilson and David Knox to perform and fulfil the trusts aforesaid, the said John Knox, James Boggs and James A. Knox, do hereby nominate and appoint, authorise and empower the said William Wilson and David Knox as their lawful attorneys, and as attorneys for said firms, to collect, &c. And it is hereby declared, &c., that the parties of the second part or either of them, shall not be held liable for any effects that shall not actually come to their hands, or for any losses, insolvency or defaults that shall happen in the execution of this trust, either in the sale of goods, collection of debts, or misconduct of any agents or attorneys, unless in cases of wilful neglect of duty, or want of proper care, diligence and fidelity on the part of the said assignees.

[Hennessy v. The Western Bank.]

In witness whereof, the said parties have hereto interchangeably set their hand and seals the day and year first above written.

|                                    |                                        |
|------------------------------------|----------------------------------------|
| Sealed and delivered in the        | JOHN KNOX,         [SEAL.]              |
| presence of us                     | MARY ANN KNOX,     [SEAL.]              |
|   JAMES WARRIN,                    | JAMES BOGGS,       [SEAL.]              |
|   JOHN R. VOGDES.                  | CAROLINE BOGGS,    [SEAL.]              |
|                                    | ——————————         [SEAL.]             |
|                                    | ——————————         [SEAL.]             |

This was acknowledged the same day by John Knox and his wife and James Boggs and his wife.

## SCHEDULE A.

*Real Estate, Goods, Merchandise, &c.-&c., transferred under the annexed Indenture. Particulars of the Real Estate above mentioned.*

No. 1. A certain messuage or tenement of John Knox and James Boggs, and lot or piece of ground thereunto belonging, situate on the north side of High street, between Delaware Fifth and Sixth streets, in the city of Philadelphia, containing in breadth east and west 17 feet, and in length or depth 96 feet; subject to a ground-rent of $45.33, and to two mortgages—one to Charles H. Baker, for $12,000, and the other to Thomas Kelly, for $6000.

No. 2. All that certain messuage or tenement and lot or piece of ground of John Knox, situate on the south side of Zane street, between Delaware Seventh and Eighth streets, in the said city, containing in breadth on the said Zane street, about 15 feet, be the same more or less, and extending in length or depth southward, 46 feet.

No. 3. All that certain stable or tenement and lot or piece of ground of John Knox, situate in the square between High and Zane streets, and Delaware Seventh and Eighth streets, in the said city, on the south side of a 50 feet wide court, containing in front or breadth on said court, 22 feet, and extending in length or depth southward, 50 feet.

No. 4. All that certain three story brick messuage or tenement and two story back building, and lot or piece of ground thereunto belonging of John Knox, situate on the north side of Walnut street, between Ninth and Tenth streets, in the said city, containing in front or breadth on said Walnut street, 25 feet, and in length or depth northward, 120 feet, to a 15 feet wide court running parallel with the said Walnut street, eastward into the said Ninth street, subject to a mortgage of $10,000 to Samuel Canby.

No. 5. All that two story brick messuage or tenement of James Boggs, and lot or piece of ground, situate on the west side of Delaware Front street, in the district of Southwark, in the county of Philadelphia, containing together in front or breadth on the said Front street, 33 feet 6 inches, and in length or depth westward, 100 feet; subject to a ground-rent of two-thirds of $106.67.

No. 6. All those 428 acres of land of John Knox, in Monroe county, in the State of Illinois.

|        |    |    |    |    |    |    |    |                         |
|--------|----|----|----|----|----|----|----|-------------------------|
| 2262   | "  | "  | "  | "  | "  | "  | "  | Lawrence Co. Illinois.  |
| 788½   | "  | "  | "  | "  | "  | "  | "  | Wabash Co.,      do.    |

Total, 3478½ acres.

No. 7. One pew of John Knox in the Tenth Presbyterian church in the city of Philadelphia; one do. of James Boggs, do. do.; one do. of James A. Knox. do. do. One share of John Knox in the Ice Company of Philadelphia. One do.   James Boggs,    do.                    do.

VI. — 39                    2 A *

[Hennessy v. The Western Bank.]

Household furniture in John Knox's dwelling, Walnut street.

    do.               James Boggs's, south-east corner of Eleventh and Arch.

One share of James Boggs in the Philadelphia Athenæum.

| | |
|---|---:|
| Debts due in Alabama, | $62,947.22 |
| Arkansas, | 9,654.42 |
| Illinois, | 9,603.77 |
| Indiana, | 3,727.67 |
| Kentucky, | 24,922.52 |
| Louisiana, | 1,447.91 |
| Maryland, | 1,792.96 |
| Mississippi, | 58,022.96 |
| Missouri, | 28,549.83 |
| New Jersey, | 164.59 |
| North Carolina, | 2,201.15 |
| Ohio, | 18,349.95 |
| Pennsylvania, | 20,540.33 |
| Tennessee, | 227,333.09 |
| Virginia, | 4,359.95 |
| Wisconsin, | 1,901.54 |
| Philadelphia, | 27,038.16 |
| | 502,558.02 |
| Stock on hand, | 46,326.86 |
| Bills receivable, | 67,115.20 |
| Real property, valued at, deducting mortgages, | 21,750.00 |
| | $637,750.08 |

460 shares of Grand Gulf Railroad and Banking Company's stock, of which 50 shares (75 per cent. paid) are the property of Pleasants & Kelly, borrowed from them, including 160 shares full, and 300 shares whereon 75 per cent. has been paid.

    66 shares Girard Bank stock.

    20  do.   Delaware County Insurance Company.

  135  do.   American Insurance Company.

    23  do.   Inland Fire     do.

The above, with the exception of 5 shares American Insurance Company's stock, have been hypothecated as follows, for moneys received for the use of the firms.

The American Insurance Company hold : —

  100 shares Grand Gulf Stock, (full paid.)

  200  do.     do.       (75 per cent. paid,)

    10  do.   American Insurance Company stock,

    26  do.   Girard Bank stock —

To secure John Knox's notes for $27,047.60.

The Delaware County Insurance Company hold : —

    40 shares Girard Bank stock,

  120  do.   American Insurance Company stock,

    23  do.   Inland Fire Insurance  do.     do.

    20  do.   Delaware Company stock —

To secure John Knox's note for $5000.

Todhunter & Kelly hold : —

  100 shares Grand Gulf stock, (75 per cent. paid,)

To secure John Knox's note for $4000.

Pleasants & Kelly hold : —

    60 shares Grand Gulf stock, (100 per cent. paid,)

To secure John Knox's note for $4000.

[Hennessy v. The Western Bank.]

## Schedule B.

*Preferred Debts to be paid under the Provisions of the foregoing Assignment.*

### Class No. 1.

Catharine Morris, money deposited by her.
William Boggs, money deposited by him.
Samuel L. Palmer,       do.       do.
Sophia Inglis, dividends on stock collected for her.
Frances Nixon, minor ward of John Knox, legacy collected for her.
Heirs of the late Charles Diboll, money deposited by them.
Destouet Brothers, money borrowed of them.

### Class No. 2.

Elizabeth Paxson, money deposited by her.
J. G. Gordon, money deposited by him.
Dr A. W. Mitchell,     do.     do.
James Knox,       do.     do.
Levi Ellmaker's Estate, money received.
M. Floyd, money deposited by him.
Thomas Sheepshanks, money collected for him.
Thomas Kelly, money borrowed.

### Class No. 3.

H. J. Levis, money borrowed.
Thomas Kelly, his notes lent or exchanged, and his endorsements for our accommodation.
William Wilson,     do.     do.     do.    and account.
Samuel Hildeburn,   do.     do.     do.     do.
James Gowen, money borrowed, exchanged and lent notes.
Wingate, Gaskell & Knox, exchanged and lent notes and account.
Todhunter & Kelly, exchanged notes and moneys advanced on stock deposited.
Dr Dillard, money borrowed on note.
William Wright, cash deposited by him, and our acceptance draft on his account.
Pleasants & Kelly, amount of their cash account and money lent on stocks.
George Boggs, notes and acceptances.
Estate of J. Adams, Knox and Nixon, money received for them, clerks and assistants in the store.
Samuel Hildeburn, Thomas Kelly and William Wilson's joint note lent for the accommodation of the firm.
Estate of James Smith, balance due for monies collected.
David Knox's endorsements and balance of account.

### Class No. 4.

For acceptances, balance of account, and other demands : —
George Hardy, of Lebanon, Ohio.
Robert Knox,      do.
William Smith, Washington, Pennsylvania.
Edward S. Barker, Clarksville, Tennessee.
Charles M. Barker & Co.   do.
Andrew Patterson, Mercer, Pennsylvania.
Interest on bonds and mortgages.
Philip Kelly, balance of account.
G. & W. S. Gray, Somerville, Tennessee.
All debts due by the firm under one hundred dollars.
Robert Fleming, Philadelphia.

[Hennessy v. The Western Bank.]

James Craig, Philadelphia.
William Mason,    do.
Meriwether & Ingrams, money deposited.
Cornelius & Son, amount of account.
A. Patton & Co., acceptances.
Anderson & Baldwin, do.
James Robinson,       do.
Dysont & M'Clure,    do.
Lile A. Ewing,         do.
M. & A. B. Christian, do.
Moore & Rhodes,      do.
T. M. Cartwright & Co. do.
S. P. Walker,          do.
Wm. M'Laughlin,     do.
George Crockett, (note to Parkin).
Richard Cartwright, acceptances.
Henderson & Adams,      do.
White, Turpin & Nephew, do.
Fite & Goodner,         do.
R. Payne & Son,         do.
Wilkins & Carthel,      do.
Benjamin Elder,         do.
Samuel Ewing,           do.
Adams & Crockett,       do.
James Devine, cash received.
Sleeper & Brothers, balance of account.
E. N. Scherr,           do.
A. L. Gaines, cash remitted.
Brown & Smithers, acceptances.
Henderson & Brothers, conditional acceptances if in funds.
Acceptance for Dr Meriwether.
Notes to insurance companies for premiums of insurance and balances due for policies not taken up.

Recorded May 12th 1837.

Errors assigned :

1. The court erred in deciding that the money deposited in the Western Bank was not subject to be attached by judgment creditors of Knox, Boggs & Co., if the assignment of May 1837 were void.

2. In not deciding that said assignment was fraudulent and void as against the creditors of Knox, Boggs & Co.

3. In ordering a nonsuit to be entered. ·

*J. Fallon* and *C. Fallon,* for the plaintiffs in error.

The point sustained by the court below, was ruled otherwise in *Stewart* v. *M'Minn,* (5 *Watts & Serg.* 100), and the question, therefore, is on the validity of the assignment, which is exceptionable on various grounds.

As it was not executed by James A. Knox, it does not convey his separate estate, which we contend is absolutely necessary, where the assignment stipulates for a release of all the partners, jointly and individually. *Thomas* v. *Jenks,* (5 *Rawle* 221) ; *M'Clurg* v. *Lecky,* (3 *P. R.* 83) ; *Sheerer* v. *Lautzerheizer,* (6 *Watts*

[Hennessy v. The Western Bank.]

547) ; *Whallon* v. *Scott*, (10 *Watts* 237). It is not material whether it appears that he had separate estate or not ; it is enough that the creditors are put to the difficulty of knowing whether there is such property, and they have a right to the chance of getting it. This deed contemplated execution by all the partners, and being executed by two of them only, is inoperative. *Dutton* v. *Morrison*, (17 *Vez.* 199) ; *Thomason* v. *Frere*, (10 *East* 418) ; *Heffernan* v. *Adams*, (7 *Watts* 121). There is, moreover, individual property of J. A. Knox mentioned in the schedule, viz: a pew, which is valuable as assets. The assignment, even so far as respects the partnership property, is void, because it is under seal, and not executed by all the partners. *Pearpoint* v. *Graham*, (4 *Wash. C. C.* 234) ; 5 *Missouri* 463 ; 1 *Dess.* 535 ; *Hart* v. *Withers*, (1 *P. R.* 285). Nor does it appear to be all their property, but that standing in the names of the assignors. *Thomas* v. *Jenks*, (5 *Rawle* 221).

The time allowed for a release is too short. *Ang. on Ass.* 123; 5 *Greenl.* 253 ; 4 *Mason* 206. A conditional preference is bad. *Whallon* v. *Scott*, (10 *Watts* 237). Here Henderson & Brothers were preferred for "conditional acceptances, if in funds." The power to the assignees to sell on credit is bad : so also the power to appoint attorneys authorized to exercise the powers without being liable for their fraud. *Dyott's Estate*, (2 *Watts & Serg.* 564).

*Meredith*, contra. It is now settled that an assignment by one partner of the partnership property, is sufficient to transfer it, if made for the purpose of paying the partnership debts. *Robinson* v. *Crowder*, (4 *M'Cord* 519) ; *Mills* v. *Barber*, (4 *Day* 428) ; *Harrison* v. *Sterry*, (5 *Cranch* 300) ; *Hodges* v. *Harris*, (6 *Pick.* 360) ; *Deckard* v. *Case*, (5 *Watts* 22) ; *Ball* v. *Dunsterville*, (4 *T. R.* 313) ; *Fichthorn* v. *Boyer*, (5 *Watts* 159) ; *Bond* v. *Aitkin*, (*ante* 166). The only separate estate of J. A. Knox that appears, was a pew mentioned in the schedule, which went into the assignees' accounts. This is a mere good-will, not a property to be levied on, and too trifling to be worth noticing. *Fassit* v. *Phillips*, (4 *Whart.* 399). And if the assent of J. A. Knox were necessary, it appears he did assent ; for it is so recited in the assignment, which is the plaintiff's own evidence. This assignment does assign all their estates joint and several, all their real estate. *Wharton* v. *Fisher*, (2 *Serg. & Rawle* 178). But it does not appear that J. A. Knox had any separate property besides this pew, and the case of *Thomas* v. *Jenks* went expressly on the ground that it appeared there was separate property. It is not incumbent on us to prove a negative—that he had none. That would be nearly impossible, and in none of the cases was that objection ever taken. *Thomas* v. *Jenks*, (5 *Rawle* 221) ; *Sheepshanks* v. *Cohen*, (14 *Serg. & Rawle* 35) ; *Hacker* v. *Perkins*, (5 *Whart.* 95) ; *Agnew* v. *Dorr*, (*Ib.* 131) ; *Tyson* v. *Dorr*, (6 *Whart.* 256). Nor is a fraud to be presumed.

The opinion of the Court was delivered by

ROGERS, J.—On the trial .the defendant moved for a nonsuit. It was contended by the plaintiffs that they were entitled to a verdict against the Bank, who were the garnishees, because the assignment of May 1837 appeared on its face insufficient to transfer the property of Knox, Boggs & Co., as against their creditors. But the court, disregarding this point, ordered a nonsuit on the ground that property fraudulently assigned, is not attachable under the Act of 1836, in the hands of the fraudulent assignee. In this opinion, however, the court was mistaken, as appears from the case since decided of *Stewart* v. *M'Minn*, (5 *Watts & Serg.* 101). But if the nonsuit was properly ordered, but for a wrong reason, we must suffer it to stand; and this makes it necessary to consider the second error assigned, "in not deciding that the assignment was fraudulent and void as against the creditors of Knox, Boggs & Co." Various reasons are urged against the validity of the assignment, the principal of which are, that after stipulating for a release from the creditors, who are required to execute the same in a limited time, so as to partake of the fund, the assignors, who were partners, have neither transferred their partnership nor separate estate. Out of this general proposition two questions arise: first, whether the assignment being by deed and made by two of the partners only, is not binding on the third, and therefore void; and secondly, whether the deed is void because it contains no assignment of the separate property of one of the partners.

After the case of *Deckard* v. *Case*, (5 *Watts* 22), the first point must be considered as settled in this State. It is there ruled that one partner may transfer the whole stock in trade of the firm; and if possession be delivered, and the transaction be *bonâ fide*, it matters not whether the instrument be under seal or not. Here there is no allegation of fraud, and in that respect it comes within the principle of the case cited. There, as here, the objection was made without avail, that one partner cannot bind his copartner by deed. In all essential particulars the cases are identical. The principle that one partner cannot bind his copartner by deed, only holds in an executory and not an executed contract, as for example, where a partner seeks to bind his copartner by a bond for the payment of money, or the performance of a collateral condition. And the cases, when examined, will all be found to be of this description. It would be a strange misapplication of a principle which has been already extended far enough, that where a partner in the regular course of business sells an article by a contract under seal, it should not bind the firm; and further, that even where the article is delivered in pursuance of the contract, it may be avoided. It has been decided that a release is good notwithstanding a seal, and certainly a seal would not destroy the efficacy of a receipt. *Com. Dig.*, title "*Merchant*," note *H*, 153. By the execution of the contract consummated by delivery, the property

[Hennessy v. The Western Bank.]

is transferred to the assignees, which cannot be avoided by the fact that the instrument, which is the evidence of the agreement, is under the seal of one of the partners only. In *Harrison* v. *Sterry*, (5 *Cra.* 300), it is decided that an assignment of funds for the payment of debts is in the course of trade; and whether it be a general or partial assignment, can make no difference, for they depend upon the same principle. And the views taken by this court in *Deckard* v. *Case*, are borne out fully in *Robinson* v. *Crowder*, (4 *M'Cord* 519); *Mills* v. *Barber*, (4 *Day* 425); and *Hodges* v. *Harris*, (6 *Pick.* 360).

But is an assignment, which stipulates for a release, valid without containing a transfer of the separate estate of each of the partners? And we are of opinion it is not. The creditors have, under such circumstances, a right to require a transfer of all the property liable to their debts; otherwise they may refuse to release, without losing their recourse to the property of the debtor; for so far as regards the creditors who do not come into the terms prescribed by the deed, it remains, notwithstanding the assignment, the property of the debtor. It is unreasonable to require the creditor to release his debt, unless upon the unconditional surrender of the whole property of the debtor, whether it consist of partnership effects or of the separate individual property. And this is the principle clearly asserted in *M'Clurg* v. *Lecky*, (3 *P. R.* 83); *Passmore* v. *Eldridge*, (12 *Serg. & Rawle* 201); *Adlum* v. *Yard*, (1 *Rawle* 163); *Johnston's heirs* v. *Harvy*, (2 *P. R.* 92); and *M'Allister* v. *Marshall*, (6 *Binn.* 338). A debtor cannot make a reservation at the expense of his creditors, of any part of his income or property, for his own benefit, nor can he stipulate for any advantage either to himself or family. It would be in vain to make these decisions, if in the case of partnerships each partner could withhold his separate estate from his creditors. If he cannot reserve or stipulate for any advantage to himself or family, for the same reason he cannot be permitted to withhold his separate estate from his creditors, and at the same time exact from them an unconditional release. True, it may not appear affirmatively that the partner, who neglected or refused to execute the deed, had any separate property; but this is totally immaterial, as it would not, in our judgment, help the assignment, even if it should subsequently appear that the debtor, contrary to the fac- in ninety-nine cases out of a hundred, was entirely destitute of any estate whatever. It is an indispensable condition to the validity of an assignment of an insolvent debtor, that the deed itself should contain a transfer of all his property, whether belonging to the firm or to each partner in his separate capacity. If on inspection of the deed the creditors observe that it is defective in that essential particular, they may refuse to execute a release, and are not bound to investigate the fact whether the partners have or have not separate estate. They may rely on the common sense

presumption that they have some separate property, and it would be unreasonable to require them to go further. To suffer insolvent debtors to omit such a transfer, would lead to great frauds, which even now, with every care and circumspection, it is so difficult to prevent. In truth, under our imperfect system, guard as we may, creditors are nearly if not quite at the mercy of their debtors. It operates as a means of coercion on them, with every advantage on the side of a fraudulent debtor; and this would be much increased if we should tolerate assignments, the direct tendency of which would be a temptation to withhold valuable estates from the grasp of creditors.

But this is not only true in principle, but we have the benefit of a direct decision on the point. The creditors, as is said in *Thomas* v. *Jenks*, (5 *Rawle* 226), are entitled to the benefit of the whole estate, of which they are not to be deprived by an arrangement which would impose upon them the necessity of resorting to a part of it in exclusion of the rest. The very imposition of a choice, which might prove unfortunate, would be an exposure of them to a peril which they are not bound to encounter. An assignment, therefore, that would present but a part of the effects to the creditors, and refuse the rest, is necessarily fraudulent, inasmuch as it might be a means to extort an unfair advantage. Now an assignment of partnership effects only is a partial one; and although in the case cited, it appeared affirmatively that the debtor had separate estate, yet the cause did not turn on that point, but upon the broad principle that the creditor had a right to an assignment embracing in its terms clearly and explicitly as well the separate as the joint property of every member of the firm. And this surely is imposing no hardship on the debtors; for if they have separate estate, the creditors are entitled to the benefit of it: if they have none, the deed is so far inoperative. The creditors have a right to the chance of after-discovered property, of which it may be possible the debtors at the time of the execution of the deed were ignorant. This construction has this great recommendation in my mind, that it may in many cases prevent debtors from attempting to impose onerous conditions on creditors, taking advantage of the perilous situation in which they may place them, who may for this reason only, be constrained to take part rather than run the risk of losing their whole debt.

We see nothing wrong in that part of the deed which, in order to facilitate and hasten the object and purposes of the assignment, gives full power to assignees to appoint and employ, according to their discretion, one or more agents or attorneys under them, with full or limited powers and the same at pleasure to dismiss and revoke. There is nothing more in this clause than what is usually contained in every letter of attorney. And in this case such a provision was absolutely necessary, as it will be literally impossible for the assignees to give their personal attention to the col-

lection of the numerous debts owing the firm in different parts of the United States. Indeed from necessity the assignees would have the same authority, even without any express power in the deed. If the assignees exercise their discretion improperly, as is apprehended, they will subject themselves to personal liability. Nor do we see anything exceptionable in exempting the assignees from liability for any effects that shall not come to their hands, or any losses, insolvencies or defaults that shall happen in the execution of the trust, either in the sale of the goods, collection of debts or misconduct of agents or attorneys, unless in cases of wilful neglect of duty or want of proper care, diligence and fidelity on the part of the assignees. As I construe this clause, the assignees can claim no other exemption they would not have been entitled to without it. They are liable for want of care, diligence and fidelity, and this would be the extent of their responsibility upon the general principle of principal and agent. They would not, at common law, be answerable for the acts of their agents, where proper care was taken in their selection, unless there was an omission of ordinary diligence on the part of the assignees in compelling them to perform their duty. So also, it would be unjust to charge them with property which never came to their hands, unless it appeared that it might have been reduced into possession and was not so in consequence of their supineness and neglect.

Neither do we see any difficulty in the way of the assignees, arising from the fact that persons who reside in the United States are allowed but three months, whereas those who reside out of the United States are allowed nine months to execute a release. Such a discrimination is but just, as it gives every creditor a sufficient time to examine the assignment, inquire as to the assets of the debtor, comply with its requisitions and thereby entitle himself to a participation in the fund. A creditor should decide on the expediency and justice of releasing his debt, with a view to that debt, the conduct of the debtor, the amount of his assets, and not with a reference to the probable action of other creditors.

Judgment reversed, and a *venire de novo* awarded.