## Heckman *et al. versus* Messinger.

*Assignment for creditors valid without filing and approval of bond of assignee.— What reservation will avoid assignment.—Assignment for all creditors, private and partnership, when valid.*

1. An assignment for the benefit of creditors passes title to the assignee though his bond is not filed and approved within thirty days from the execution of the deed by the assignors: and it is not, for want of approval, inoperative and void as against subsequent execution-creditors.

2. A reservation by the assignor of the "benefit of any and all exemption laws" will not avoid the assignment.

3. An assignment by partners of all their "estate real personal and mixed," including "separate as well as partnership property," in trust to pay their creditors, "in full if there be sufficient to satisfy the same," and if not, then *pro rata,* is not void, because the rights of separate and partnership creditors are not expressly defined: for under the Act of 1843, the assignment enures to the benefit of all creditors in proportion to their respective demands.

4. But where the deed recites that the assignors are unable to pay their various creditors, and are desirous of distributing their estate among them according to their several equities, their intention to preserve the distinction between their joint and separate creditors is sufficiently indicated, and the assignment is therefore not void.

ERROR to the Common Pleas of *Northampton county.*

This was an action of trespass *vi et armis,* by David K. Messinger against Thomas Heckman, sheriff of Northampton county, McEvers Forman, John T. Knight, John Drake, Derrick Hulick, John Opdyke, Christian Pretz, and Thomas B. Wilson, for taking and carrying away three hundred tons of plaster claimed to belong to the plaintiff.

The case was this:—On the 24th of January 1862, McFall & Martin executed a general assignment of all their estate, real, personal, and mixed, including separate as well as partnership property, for the benefit of their creditors, to David K. Messinger as assignee, and on the 30th of the same month the assignment was duly recorded, as required by the Act of Assembly. The trust was accepted by Messinger, the assignee, on the same day the deed of assignment was executed. The plaster in question was the property of McFall & Martin, and was claimed to have passed under and by virtue of this assignment to Messinger, the plaintiff.

The plaintiff, as assignee, filed a bond on the 6th of March 1862, but the bond was not approved by one of the judges of the court. It had been presented to Judge Merrill for approval, but the judge declined to do so, not being satisfied that the security was good or sufficient. This bond remained on file, but the assignee made no further effort to have the bond approved.

On the 25th February 1862, Drake, Wilson & Co. obtained a judgment against McFall & Martin, in the Common Pleas, issued a *fieri facias* upon the same, and placed it in the hands of the sheriff 25th February 1862. Thomas Heckman, who was

13 WR.—30

then sheriff, levied upon this lot of plaster, said to be about one hundred and sixty tons, and sold the same on the 10th of March 1862 for $648.

This action was brought against Sheriff Heckman and the other defendants as above stated, they being the plaintiffs in the execution under which the plaster was sold.

The defendants' counsel requested the court to instruct the jury as follows :—

1. The deed of assignment is inoperative and void. It undertakes to assign partnership property for payment of individual debts.

2. No bond having been filed when the *fi. fa.* upon judgment of Drake, Wilson & Co. *v.* McFall & Martin was issued and levy made, the said *fi. fa.* having been issued more than thirty days after the execution of assignment, the said assignment was inoperative as against such execution-creditors.

3. No bond approved as required by law having been filed in the office of the prothonotary of this court, the said assignment was inoperative against Drake, Wilson & Co,, execution-creditors, and the execution issued by them, and on which the property was sold, could not be affected thereby.

4. The paper purporting to be a bond which was filed is not in accordance with the requirements of the Act of Assembly.

5. Plaintiff has not shown such right of property as to authorize a recovery in this suit under the evidence ; and

6. That the reservation of exemption in the deed of assignment, coupled with the carrying out the same by the assignee, as appeared by the inventory setting apart to the assignor three hundred dollars' worth of the assigned property, avoided the deed as to creditors not accepting under it.

The court below (MAYNARD, P. J.) instructed the jury as follows :—

"We instruct the jury that the title to the property of McFall & Martin passed to the plaintiff, as assignee, under the deed of assignment and his acceptance of the trust, the same having been recorded within thirty days, notwithstanding that the assignee neglected to have the bond approved and filed within the thirty days after the execution of the deed of assignment.

"The recording of the assignment within the thirty days from its execution gave the notice required by law to the creditors of McFall & Martin, and if not satisfied with the bond or security given by the assignee, they or any of them could have applied to the court for a citation, requiring him to perfect his bond by having it approved, or give additional security if his bond had been found to be inadequate security for the performance of the trust.

"The argument of the counsel for the defendants has been able and elaborate, embracing the whole field of the policy of the law in reference to voluntary assignments. But the principal,

[Heckman *et al. v.* Messinger.]

and, in our opinion, the only important legal question in the case, is the one we have stated. There is another point verbally made by the counsel for the defendants on which we are requested to instruct the jury, which is in substance that the assignment is rendered inoperative and void in consequence of this clause in the assignment: 'Saving and reserving, however, unto the party of the first part all benefit of any and all exemption laws of this Commonwealth.''

"We do not think that this clause renders the assignment void. It reserves no right of property which any creditor of the assignors could claim. It is simply claiming what the law allows. It would be a solecism to say that is fraud *per se*, which the law not only allows, but which our statute, in wisdom and mercy, has conferred for the benefit of the unfortunate debtor and his family.

" The defendants' counsel has submitted five points in writing, on which we are requested to instruct the jury; but in the view we have taken of this case in our general charge, a specific answer to the points becomes perhaps immaterial. But the court returns a negative to each point, and instructs the jury, that from all the evidence in the cause, the plaintiff is entitled to recover the value of the plaster at the time it was levied and sold, with interest on the same from the date of the sale."

Under these instructions there was a verdict and judgment in favour of the plaintiff for $759.77.

This writ was thereupon sued out by defendants, and the charge of the court below assigned for error.

*H. D. Maxwell* and *M. H. Jones*, for plaintiffs in error.—1. Our first point asked to have this assignment declared inoperative and void as against creditors not accepting it, because it undertook to assign partnership property for payment of individual debts. It conveys and transfers " all the estate, real, personal, and mixed, of the grantors, including separate as well as partnership property, &c., in trust to pay with the moneys therefrom the creditors of assignors, partly of the first part, their respective and just demands in full, if sufficient to satisfy, and if not sufficient to satisfy the same in full, then *pro rata* according to the respective amounts of the same, without preference as between individuals." The parties of the first part were Peter Winters McFall, Joseph Martin, and Mary Matilda, wife of Peter Winters McFall. The latter, it is true, exempts her separate estate, and is said only to join for the purpose of barring her dower in real estate owned by her husband; but the direction as to distribution includes her creditors, if she had any, as well as the others, and her joining, as well as the inventory and records in evidence, showed that the real estate, appraised at $10,000, belonged to P. W. McFall and Joseph Martin, as tenants in common and not as joint tenants.

[Heckman *et al. v.* Messinger.]

The law makes a clear, positive, and defined distinction between separate and partnership creditors, and between the rights 'of each. The separate creditors are entitled to the separate property. The partnership creditors to the partnership property. See Black's Appeal, 8 Wright 503; Houseal & Smith's Appeal, 9 Id. 484; Hubler *v.* Waterman *et al.,* 9 Casey 415.

This assignment mingles together the partnership and separate property, and directs its distribution equally among all the creditors of the assignors. The effect of this would be to either nullify the settled rules of law above cited, or to produce that confusion and uncertainty that would delay, hinder, or defraud creditors. The true, safe, and proper course where partners wish to make assignments of their separate and joint properties is to do so, as in Houseal & Smith's Appeal, 9 Wright 484, by separate assignments, providing in each for the class of creditors to whom the law says the property should go. This court has in numerous instances held assignments for the benefit of creditors void as against creditors refusing to accept them, because of their violation of rules of law, or the policy of the law. See Thomas *v.* Jenks, 5 Rawle 221; In re Wilson, 4 Barr 430, &c.

2. It was decided at Nisi Prius, Boker *v.* Crookshank, 1 Philadelphia Rep. 193, Rogers, J., delivering the opinion of the court, that " An exception of scheduled property to the assignor out of a general assignment for the benefit of creditors, renders the whole void, though the appraised value of the property excepted would be no greater than the debtor would be entitled to retain under the Exemption Acts, and though no release be stipulated or preference given therein."

The decision was referred to in the argument of Blackburne's Appeal, 3 Wright 166, in which case the court held that the assignor who had set apart $300 under an assignment, was correctly charged therewith. Here one of the inventories filed show that the appraisers, at the request of the assignee, appraised and set apart as property exempted and reserved, three hundred dollars' worth of the property assigned. We can see no difference whether the assignor puts down in the assignment the goods to amount of $300 he wishes to retain, as in Boker *v.* Crookshank, or whether, under an exception in the deed, the assignee has it done for him. If a debtor considers that making an assignment is preferable to him than having his property taken upon compulsory process, he must take the law as he finds it. It is only upon compulsory process that the law allows him the $300 exemption. We claim that this reservation for the benefit of the assignors which they got avoids this deed against non-accepting creditors.

3. This assignee, who claims this plaster against creditors under and by virtue of this assignment, denying their right to

[Heckman *et al. v.* Messinger.]

take it in execution, has never to this day filed a bond as required by the Act of Assembly, which gives validity to the assignment. The execution issued by Drake, Wilson & Co. was not issued until after thirty days from the delivery of this assignment, and at that time there was no paper on file in the prothonotary's office purporting to be a bond. The paper subsequently filed, without the approval of a judge, was not even in double the amount of the one inventory, leaving out entirely the $300 exempted property; and for the want of this bond, as required by the Act of Assembly, this assignment is inoperative as to such creditors as may have issued executions. The law in this Commonwealth in relation to voluntary assignments by debtors now composes an entire and perfect system, and will be found collected in Brightly's Purd. pp. 60 and 61.

The Supreme Court have in a number of cases decided that an unrecorded assignment is good and binding for many purposes. See Seal *v.* Duffy, 4 Barr 274; Weber *v.* Samuel, 7 Id. 522; Stewart *v.* McMinn, 5 W. & S. 100; Burke's Estate, 1 Pars. 472. In all these cases it was held that such unrecorded deed is of no avail against a creditor who obtains judgment and issues execution. But it was found that this requirement was not sufficient to prevent the evil of an assignment being made stopping the creditor from pursuing his rights, and the assignee folding his hands or converting the property into money, but giving no security that would protect the creditor. Hence the legislature deemed it necessary to make other provisions and requirements. And notwithstanding it had been decided, as in the case of Charles Shaw, assignee of Bickham, 1 Ashmead 382, that if the assignee sold the property which passed to him under the assignment, before he filed the inventory and gave the security required by law, he was liable to citation and dismissal; that was found not sufficient, and the codifiers reported to the legislature the Act passed June 14th 1836, P. L. 630, making the same requirements as to filing inventory, and giving bond within the thirty days which had been required as to the recording the deed, and providing that "the assignee or assignees as aforesaid shall, as soon as such inventory shall have been filed, give a bond or bonds with at least two sufficient sureties, to be approved of by one of the judges of the said court, in double the amount of the appraised value of the estate so assigned," giving also the condition of the bond, and enacting that such bond "shall be filed in the office of the prothonotary of the said court, and shall by him be entered of record, and shall enure to the use of all persons interested in the property assigned:" Act of June 14th 1836, §§ 1, 5, 6. The inventory is required to be filed within the same thirty days that before the deed was required to be recorded in, and the bond is to be filed as soon as the inventory was filed. The

[Heckman *et al. v.* Messinger.]

creditor, in case the inventory.or bond is not filed within thirty days, is not *obliged* to apply to the court for a citation, but may disregard the assignment the same as though it had not been recorded; and if he has judgment, may issue execution, levy on, and sell. Great reliance is put upon the *obiter dictum* of Justice Sergeant, in Dallam *v.* Fitler, 6 W. & S. 326, as to what, in his opinion, the remedy for neglect of filing bond and inventory *seemed* to be. But the point we make was not raised in that case, and was not before the court.

*H. Green,* for defendants in error, contended : 1. That there was not a spark of evidence showing that the assignment "undertakes to assign partnership property for payment of individual debts." The assignment itself shows nothing of the kind. It is a conveyance (as it ought to be) of all the property of the assignors, both joint and separate, reserving only the benefit of the exemption laws of the Commonwealth. The trust directs the conversion of the property assigned into money, and then requires that the assignee "shall and do pay the creditors of. said party of the first part, their respective and just demands in full, if there shall be sufficient to satisfy the same, and if not sufficient.to satisfy the same in full, then *pro rata* according to the respective amounts of the same, without preference as between individuals."

Where is there any attempt in this language to apply the partnership property to pay the individual debts ? Where the slightest effort to interfere with the distribution which the law makes of property assigned for the benefit of creditors ? Is it possible to conceive how this assignment could have been more fairly drawn, with reference to the existing state of the law, and the rights of creditors ? The assignment declares, as do our Acts of Assembly of 17th April 1843, § 1, and 16th April 1849, § 4, that there shall be no preference as between individuals.

2. There is no evidence that the grantors had any other than partnership property, or that any other than that kind of· property passed by the deed. There is no evidence that the real estate was held by a tenancy in common. The inventory appears to be an inventory of all the estate held by McFall & Martin as partners, especially including the real estate.

Nor was there any evidence showing.that the assignees owed any individual debts whatever.

3. But if even the assignment had contained a positive and direct preference of individual creditors, to the exclusion of the partnership creditors, the assignment would not have been avoided, but only the preference : Acts of 1843 and 1849; Law *v.* Mills, 6 Harris 185; Wiener *v.* Davis, 6 Id. 331; Bittenben-

der *v.* Sunbury & Erie R. R. Co., 4 Wright 269; Hubler *v.* Waterman, 9 Casey 415.

The cases cited on the other side stating the rule of distribution, applying partnership assets to partnership debts, and separate assets to separate debts, are the undoubted law of the land; and when Mr. Messinger files his account as assignee, if it shall be found that there are two kinds of property and two sets of creditors, these authorities will control the distribution of the fund.

4. The defendants' sixth point asked the court to say that the reservation "saving and reserving, however, unto the party of the first part all benefit of any and all exemption laws of this Commonwealth," avoided the assignment, which was negatived.

The case of Blackburne's Appeal, 3 Wright 160, cited on the other side, is an authority directly against the plaintiffs in error, for this court there held that the $300 exemption was waived by an assignor, unless expressly reserved in the deed of assignment. See also Mulford *v.* Shirk, 2 Casey 473. Boker *v.* Cruikshank, 1 Phila. R. 193, was an exception out of an assignment of certain specific property for the benefit of the assignor, which was held to avoid the assignment because he was reserving a benefit for himself, which was against the policy of the law.

In Knight *v.* Waterman, 12 Casey 258, it was held that "the exception from a general assignment for the benefit of creditors of certain specific property, without any stipulation, reservation, or condition in favour of the assignor, does not render it void as to creditors."

In the case at bar there was no reservation of specific property, but only of the benefit of the exemption laws, so that the assignors might not be held to have waived a privilege of which the law allowed them to avail themselves. Such a reservation they had an undoubted right to make.

5. The plaintiffs in error complain under these specifications that the court did not hold the deed of assignment to be avoided by the omission of the assignee to have his bond duly approved and filed within thirty days from the date of the assignment.

The assignee's bond was given on the 21st of February, the twenty-eighth day after the assignment was made, and the same day the inventory was filed; and it was filed in the office of the prothonotary on the 6th of March following, and has remained there ever since. Whether it was approved depends upon the construction to be placed upon the endorsement made by Judge Merrill, "Feb. 21st, A. D. 1862. Bond presented and filed, and Friday, 28th inst., fixed for additional bail, if required by the court." The bond is of course a valid subsisting obligation, for its want of approval would constitute no defence by the obligors to an action upon it; and the testimony of Judge Merrill showed

[Heckman *et al. v.* Messinger.]

it was ample security for all the property which could come into the hands of the assignee: Mears *v.* The Commonwealth, 8 Watts 223.

But if it were neither filed nor approved, the assignment would not be void for that reason.

The learned counsel for the plaintiffs in error argue that because. our legislature, in the 5th section of the Act of 24th March 1818, has declared that assignments which have not been recorded within thirty days shall be void as against the creditors, therefore the omission to file a proper bond within the same time must have the same effect. Premising that the conclusion is a plain *non sequitur*, we respond to the opposing argument as follows :—

1st. That there is no law requiring that the assignee's bond shall be either filed or approved within thirty days from the date of the assignment.

2d. There is no law directing that an omission to file, or have approved, the bond of an assignee within thirty days or any other time, shall operate to avoid the assignment as to any creditor.

3d. There is a very plain legislative intent to be derived from our statute, that such an omission shall not have such an effect.

4th. That this court has expressly decided that an omission to file the bond and have it approved, will not avoid the assignment as to any creditor.

5th. That if there were no such decision, every principle of public policy and of the law regulating assignments for the benefit of creditors, requires that such a decision should be now made.

The opinion of the court was delivered, May 15th 1865, by

READ, J.—The assignment in this case was duly executed and recorded, and inventories with an appraisement according to law were duly filed within the thirty days, and the bond was presented to and marked filed by one of the judges within the same period, but was never approved by him. It is alleged by the plaintiff in error that this assignment was entirely null and void for several reasons, and first, because the bond was never approved. Now it is perfectly clear that the assignment operated from its date, and conveyed all the property assigned by it to the assignee, who accepted the trust, and who could have been compelled to execute a proper bond, or to be dismissed from the trust, and another assignee appointed in his place. "There would be plausibility," says Judge Knox, "in the argument of the defendant in error, if it could first be shown that he was not a trustee or an assignee until he had given bond and filed his inventory; but the law is not so. The assignment takes effect upon the day of its execution and delivery, whereas the inventory may be filed within thirty days thereafter, and the bond

is to be given as soon as the inventory and appraisement shall be filed. In Dallam *v.* Fitler, 6 W. & S. 323, it was held by this court that a sale of goods by an assignee who had not given bond, passed a perfect title:" Whitney's Appeal, 10 Harris 505. Judge Sergeant said, 6 W. & S. 326, " On the contrary, it seems to contemplate that the title and power vest from the execution of the assignment, and that the assignee must be proceeded against for neglect of duty if he omits them." There is, therefore, nothing in this objection, which seems to have been the one principally pressed upon the court below.

The second reason that there is a saving of the benefit of the Exemption Law also fails: Mulford, Reeves & Co. *v.* Shirk, 2 Casey 473, which is not affected by Blackburne's Appeal, 3 Wright 160.

The third and last reason is, That it is an assignment of partnership and separate property in trust to pay all creditors *pro rata.* The court below regarded it as an assignment for the benefit of partnership creditors, and the evidence clearly shows that nothing but partnership property passed under it. The counsel for the plaintiff in error, however, think the assignment is void under the decisions of this court, in Black's Appeal, 8 Wright 503, where all the cases are collected, and in Houseal & Smith's Appeal, 9 Wright 484.

In Hennessey *v.* The Western Bank, 6 W. & S. 300, it was held that an assignment by partners, stipulating for a release, is not valid, without containing also a transfer of the separate estate of each of the partners. Under the law, therefore, as it stood before the Acts of 1843 and 1849, it was imperative under those circumstances, that the assignors should convey both their partnership and separate estates to their assignees. If, therefore, such an assignment was now made, which would have been invalid under the old law, all those preferences would be wiped out, and the assignment " be held and construed to enure to the benefit of all the creditors in proportion to their respective demands." This is a statutory provision, and shows the policy of the legislature. " The Act of 1843," says Judge Lowrie, " merely prohibits all preferences in assignments in trust for creditors ; and since that act an assignment may be defined to be, a transfer by a debtor, of the whole or part of his effects, to some person in trust, to pay all his creditors in like proportions, and to return the surplus, if any, to the debtor :" Wiener *v.* Davis, 6 Harris 333.

Now this assignment has followed the law and its interpretation, but if necessary there is language in it securing to the creditors their respective equities, quite as strong as that in Andress *v.* Miller, 3 Harris 316. These partners say they are

unable to pay their various creditors, but are desirous of distributing said estate among them according to their several equities, that is partnership property to pay partnership debts, separate property to pay separate debts.

The reasoning in Black's Appeal has received elucidation by Lord Chancellor Westbury in Ex parte Topping, 12 Law T. Rep. 3, 11 Jurist N. S. 210, decided on the 11th February 1865. Speaking of the doctrine of equity on this subject, he says: "The right of proof under such circumstances is regulated by arbitrary rules which are derived from the principles of this court as to marshalling. They were embodied for the first time in the order of Lord Loughborough, made in the year 1794. By the effect of that order, separate accounts are kept of the joint estate and of the separate estate of each partner, and if there be any account of joint creditors, the joint creditors are not admitted to prove against the separate estate, but must wait until the separate creditors are paid, and then receive from the separate estate the surplus only which remains. The consequence is, that it has been held that one partner cannot prove against his copartner, because, in ordinary cases, that proof would diminish the estate of the debtor partner, and thereby the partner, if admitted to prove, would come in competition with his own creditors, namely, the joint creditors, and detract to the extent of the proof from the benefit they would derive from the separate estate. Therefore, it has been laid down as a general rule, that a partner cannot be permitted to prove against the estate of his copartner."

In the case before him, the Lord Chancellor held this rule did not apply, because there was an undisputed private debt due from a partner to his copartner, and by no means did it appear possible that there could be any surplus of the partner's estate, whether proof were admitted against it or not, although the joint debts were still in existence, and therefore proof by the copartner against his partner's separate estate was admitted, subject to the proof being expunged in case a surplus should afterwards arise from the debtor partner's estate. This decision operated directly in favour of the joint creditors, who would thus get the benefit of the dividend payable on this private debt, of which a literal application of the rule would have entirely deprived them.

If, however, the rule as to insolvent or bankrupt estates is to be engrafted upon voluntary assignments, there is no difficulty in applying it to assignments in trust which have used the statutory language, in strict conformity with Lord Loughborough's order: Eden on Bankruptcy, App., 35 Law Library 435. We think, therefore, the reason fails, and there is nothing in the exception to the rejection of evidence.

[Heckman *et al. v.* Messinger.]

This suit has grown out of an experiment by a creditor to pay himself in full, instead of taking his *pro rata* share of his debtor's assets.

Judgment affirmed.