By the Court. Oakley, Ch. J.
This case involves a question of great practical importance, which, so far as we can learn, has never been decided by the courts of this state, viz. whether it is competent for one member of a partnership, without the assent or concurrence of his copartner, who is present or capable of acting, to make a general assignment of the property and effects of the firm, to a trastee for the payment of the partnership debts, ratably and in equal proportion.
The state of the law as settled in this state, appears to be this: It has been held by the Court of Chancery that one partner may, from time to time, without the assent of his copartner, assign and deliver specific portions of partnership property to a creditor of the firm in payment of a debt. That inasmuch as it is in the power of one member of a firm to pay off a debt, he may pay it in a specific chattel, actually delivered to the creditor, as well as in money.
It has also been adjudged, that a general assignment by one partner to a trustee for the benefit of creditors, giving preferences, executed without the assent and against the wishes of his copartner, cannot be sustained. This, was on the ground that *291 such an act was not incident to the rights or the power of any one partner. It appears to us that the decision referred to rests, not on the principle that preferences may not in any case "be given by one partner; because that may be done by a specific payment, or application of property, in the mode already stated; but on the principle that one partner cannot, of his own exclusive authority, make a trustee to dispose of the partnership effects in behalf of all the copartners. That it is not incident to the right of one partner thus to select an agent, and clothe him with all the authority of the firm for the disposal and application of its property.
It is obvious to every one who will consider the matter, that no such right can exist, when the concern is solvent, and the business of the firm is going on in its usual course. It is contrary to the very nature of the contract of partnership.
Hor do we perceive that the circumstance of insolvency can make any difference. In that case each partner has a great and powerful interest to see that a proper person is selected to wind up the affairs of the concern; as a judicious administration of the estate will beneficially affect the extent of the liability of each partner for the debts finally remaining undischarged, as well as the prospect of an ultimate surplus.
On the principle which forbids such assignments, giving preferences, we hold that one partner cannot execute a general assignment to a trustee for creditors, (although it prefers no one,) without the concurrence of his associates. Such assignments may be, and indeed have been upheld in some of the other states, but we believe always on some peculiar circumstance, such as the residence or absence of the other partners abroad, or the like.
The chancellor, in the case of Egberts v. Wood, 3 Paige 517, reviewed the authorities then published, and showed that they did not sustain the doctrine contended' for here. He did not, however, express an opinion on the point. In Havens v. Hussey, 5 Paige 30, he decided that one partner could not, against the wishes of his copartner, assign the partnership effects to a trustee, for the benefit of creditors, making preferences between them; on the principle that it was no part of the ordinary *292 business of a copartnership to appoint a trustee of all the partnership effects, for the purpose of selling and distributing the proceeds among the creditors in unequal proportions.
The question was more or less discussed Harrison v. Sterry, 5 Cranch 300; Anderson v. Tompkins, 1 Brockenbrough’s C. C. R. 456; Robinson v. Crowder, 4 M’Cord’s Law R. 519; Deckerd’s case, 5 Watts 222; Hitchcock v. St. John, 1 Hoff. Ch. R. 511; and Kirby v. Ingersoll, 1 Dougl. R. (Michigan,) 172, 177.
In the latter case, an assignment like the one before us was held to be invalid in a well reasoned opinion; and although a different doctrine may prevail in other states, we have no hesitation in holding that a partner can in no case make a general assignment to a trustee for the benefit of creditors, against the consent or without the acquiescence of his copartner—the latter being present or capable of acting in the matter. The insolvency of the firm, which is urged as warranting Colt in making this assignment, might be a good reason for such an act where there is a necessity for prompt action, in order to avoid preferences and to prevent a sacrifice of property; the other partner being abroad or absent so that he cannot be consulted, and the affair being conducted in entire good faith. There is no circumstance of the kind here; and indeed for what we can see, the firm might have continued its business till this time. The assignment to Wilson is therefore void.
As to the transfer of the real estate to Lamson & Lathrop— although the purchase was made in the name of Butts, still, taking all the facts into view, we "consider that the land was assets of the firm. The price was to be paid out of the profits of the concern, and to some extent payments were made from the partnership, in improving the property. It was bought for the purposes of the firm, to enable the partners to carry on their business; and it is to be deemed in equity as partnership effects, which could not be thus disposed of by the act of one partner, without the sanction of the other.
The judge was right in refusing to dissolve the injunction, and the appeal must be dismissed.
*293 1st the second cause, Hayes v. Heyer and others, the facts appear in the judgment of the court. The suit was commenced in the late court of chancery, and came to this court from the supreme court. The cause was argued by
H F. Gla/rk, for the plaintiff, and
H Hetehwn and T. Fessenden, for the defendants'.
Campbell, J., delivered the opinion of the com!:—
The bill in this cause was filed for the purpose of setting aside an assignment, made by the' defendant Heyer, with the assent of the defendant Ketchum, to the defendant Bement. The complainant and Heyer were the general partners, and Ketchum was the special partner, in a limited partnership, transacting a wholesale grocery business in the city of New York, under the firm name of Hayes & Heyer.
On the 11th of December, 1846, Heyer, in the name of the firm, executed a general assignment of all the partnership effects to Bement, providing for payment of all the creditors ratably according to their respective claims. At the time of its execution, the complainant was in the city, and at the place of business of the firm, but did not leam that an assignment had been made until some days after, and has never given a direct or implied assent. The special partner consented to its execution. The complainant files this bill to set aside the assignment, alleging among other things, that under the circumstances of this case, the defendant Heyer had no power to make it. We shall proceed to consider this point, without adverting to the others raised by the complainant, because if it is determined in his favor, the case is disposed of.
The title of the revised statutes relative to limited partnerships, (1 E. S. 164,) appears to have constituted the effects of the firm a special fund for the benefit of all the creditors; which fund, in case of insolvency, is to be distributed among such creditors ratably, in proportion to the amount of their respective debts. If the insolvent partners neglect to place the partnership effects in the hands of a proper and responsible trustee, to be *294 distributed without delay among all the creditors of the firm other than the special partner, ratably in proportion to the amount of their several debts either due or to become due, any creditor may file a bill in this court in behalf of himself and the other creditors of the firm, and may have a receiver appointed. (Innes v. Lansing, 7 Paige 583.) If this firm was then insolvent, Heyer did no more than was his duty or that of the firm, in placing the funds in the hands of a proper party for distribution, provided he had the requisite power. When any partnership becomes insolvent, in equity the property constitutes a fund which, in case of disagreement of the partners, the court would place in the hands of a receiver for equal distribution.' In relation to general or limited co-partnerships, we apprehend the rule is the same when distribution is made by the court; but when directed by the partners themselves, in ordinary co-partnerships, they may give preferences to one creditor or class of creditors over others, while in limited co-partnerships, the statute restricts that power and prescribes the mode of distribution. But in both cases, the question of the power of a single partner applies. In both cases, all the partners—at least all the general partners in a limited, as well as in an ordinary co-partnership, have an equal interest in seeing that the best disposition be made of the assets, that the trustees who may be appointed shall enjoy the confidence of all, and shall render the proceeds of the partnership most effectual in the discharge of the partnership liabilities. In this case, if the firm of Hayes and Heyer was insolvent, then Ketchum, Rogers & Bement, who were large creditors, might, according to the decision in Innes v. Lansing, have at once filed their bill, and compelled an assignment of the effects of the special partnership to a receiver. It was not necessary to proceed to judgment. They would thus have obtained the object sought under the assignment, and would have deprived the complainant of all control. If, on the other hand, the firm of Hayes and Heyer was not insolvent, as contended by the defendants, then the assignment was clearly void, and would have been, if made by all the partners, because it would manifestly operate to hinder and delay creditors. Certainly, no individual or firm being solvent, and having sufficient *295 assets to pay his or their debts, can be allowed to make an assignment for the purpose of thus preventing a sacrifice, and securing to the assignors a larger surplus than would remain, if the property was forced to an immediate sale.
It is evident, from the testimony in this case, that this firm was insolvent at the time of the assignment, though from the representations made by the general partners, it may well have been supposed by the special partner and the assignee that such was not the fact. We shall therefore proceed upon the ground that the firm was insolvent. Could, then, Heyer and the special partner make the assignment, the complainant, who was the other general partner, being present at the place of business'of the firm on the very day it was made, and who at the time did not know it was contemplated, and who remained for some time after in ignorance of its existence? It is true, that on the following day the complainant consented to a dissolution, and authorized Heyer to collect the debts and to discharge the liabilities of the firm. But this assent to a dissolution, given on the following day, in ignorance of the assignment, cannot be considered as a ratification. That assent to a dissolution conveyed no authority to Heyer to appoint other trustees or assignees to wind up the estate, even if it had been made on the previous instead of the subsequent day. The assignment must stand or fall, according to the determination of the question, whether on the 11th of December, the day of its execution, Heyer had the power to make it. In mercantile co-partnerships, especially in the purchase and sale of goods, in the acceptance, drawing and indorsing of bills of exchange and promissory notes, the single partner acts within the scope of powers necessary generally to the very existence of the co-partnership, and without which it would oftentimes possess neither vigor nor vitality. In the general management of the business of the firm, <c so intimate is the confidence, and so universal the community of interest and operation between partners,” that it would be difficult to mark out the precise line which limits the power of the partner over the partnership effects, and indeed indirectly over the separate fortunes of the other members of the association. But the power which is necessary to direct, manage, and *296 control, to buy and to sell, to create and to discharge liabilities, and which, unless limited by express agreement, vests necessarily in each co-partner, is dependent upon the life, upon the actual existence of the co-partnership. While the partnership lives, this power is required, as well for the convenience of the partners themselves, as for the protection of those who deal with them. When the partnership ceases, when it is dissolved by the death of any of its members, by bankruptcy or assignment, then the power exercised by individual partners is limited, for the necessity for its exercise no longer exists. One partner cannot by will, introduce his executor or representative, or any other person into the co-partnership, nor can he by assignment of this interest bring his assignee into the firm, nor in case of individual bankruptcy, does the representative of the estate of the bankrupt partner, become a member of the partnership. In short, when by the accidents of death, or by the misfortunes of trade, the partnership becomes dissolved, the representatives of the deceased or failing partner possess only the power of compelling an account and settlement of the partnership business. We cannot therefore see upon what principle, a single member of a failing firm possesses the power of appointing a trustee, and without consent or knowledge of the other partners, transferring to such trustee the entire partnership effects, and empowering him to compromise the debts due, and collect and distribute the assets. Such a power is not necessary, and ought not to be implied. We entirely concur in the views expressed in the case of Deming v. Golt, decided by our brethren, (a) and the decision in that case may therefore be considered as expressing the unanimous opinion of all the justices of this court, “ that a partner can in no case make a general assignment to a trustee for the benefit of creditors, against the consent or without the concurrence of his co-partner, the latter being present, and capable of acting in the matter.”
We have looked into the cases cited by the defendants, and find nothing which induces us to change the views herein *297 expressed. The case of Harrison v. Sterry, 5 Cranch, does not present circumstances like the present. There was in that case only a partial assignment. It did not extend to all the effects of the partnership. It was made by the managing partner residing in the United States, the other co-partners residing in England. It appears also that the managing partner, who made the partial assignment, held powers of attorney from his co-partners, though not deemed sufficient to empower him in terms to execute a deed in their name. The confidence and general trust reposed in him were however manifest.
In the case of Anderson v. Tompkins and others, 1 Brockenburgh 456, Chief Justice Marshall certainly considers at length the question of the power of one partner to make a general assignment, and he comes to the conclusion that under the circumstances of that case, the partner had the power to make it. There the firm were transacting business in Virginia; one partner had left for Europe, and the firm having failed in business, the partner remaining made the assignment. In that case, however, he observes, “ this power would certainly not be exercised in the presence of a partner without consulting him, and if it were so, slight circumstances would render the transaction suspicious, and perhaps fix on it the imputation of fraud.” Also he says, “ this reasoning applies with increased "force, when we consider the situation of these partners. The one was on a voyage to Europe, the other in possession of all the partnership effects for sale—the absent partner could have no agency in the sale of them—he could not be consulted—he could not give an opinion—in leaving the country he must have intended to confide all its business to the partner who remained for the purpose of transacting itand in another part of his opinion, he adds, “ in extraordinary cases, an extraordinary use of power must be made.” The circumstances which marked that case do not exist in this. Here the partner was present, and could have been, and ought to have been consulted. But in that case, with all due respect to the opinions of that learned and almost unequalled judge, we cannot but think that his reasoning shows the necessity and existence of the great power of a partner, in the general management of its business during the lifetime of the co-partner *298 ship, rather than in appointing trustees, and in giving exclusively the direction to the settlement of its affairs when it shall have ceased to exist. In the one case, the existence of the power is necessary for the protection of those who deal with the firm; in the other, by its non-existence the partners may be protected against each other.
Another able judge of the supreme court of the United States, Justice Washington, in Pierpoint v. Graham, 4th Wash. C. C. R. 232, a case where there was an assignment made by one partner, the other being absent, observes, “ that though each partner is possessed of the whole effects, and may dispose of the whole to third persons who deal with the partnership, and though such power becomes of necessity incorporated into the nature and being of the association, yet “ it may admit of serious doubt whether one partner can, without the consent of his associates, assign the whole of its partnership effects, (otherwise than in the course of trade in which the firm is engaged,) in such a manner as to terminate the partnership. An assignment of all the effects to trustees for the benefit of the creditors of the concern, would seem emphatically to be of this character. Such is its obvious design, and such must be its necessary consequence.”
We entertain no doubt that in this case Heyer did not possess the power to make the assignment, and therefore it must be set aside, and a receiver must be appointed of all the effects of the partnership. The assignee may be allowed for such payments of dividends as have been made to creditors pursuant to the statute, paying over the balance on hand to the receiver, but the assignee is not to be allowed commissions.
An account must be taken between the partners, and of ¿the partnership effects, and for this purpose, and for the appointment of a receiver, an order of reference must be entered referring it to Hon. A. Yanderpoel. The question of costs is reserved until the coming in of the report of the referee.

 See preceding case, Deming v. Colt.