BOWDOIN, The (The HAUGESUND, v.). See Case No. 6,220.

BOWDOIN (PARKMAN v.). See Case No. 10,763.

BOWEN (BUXTON v.). See Case No. 2,260.

---

## Case No. 1,720.

### BOWEN et al. v. CHASE et al.

[7 Blatchf. 255.][1]

Circuit Court, S. D. New York. June 2, 1870.

REMOVAL OF CAUSES—APPLICATION—SUFFICIENCY OF AFFIDAVIT—AUTHENTICATION.

1. Where a suit is sought to be removed into this court from a state court, under the act of March 2d, 1867 (14 Stat. 558), the affidavit which is, by that act, required to be made and filed in the state court, must, at least in the absence of any controlling statute of the United States, be taken and certified in such manner as the state law requires in respect to the taking and certifying of affidavits to be received and used in the courts of the state.

[Cited in Sutherland v. Jersey City & B. R. Co., 22 Fed. 358.]

2. If such an affidavit purports to be taken and certified in conformity with the provisions of the state statute of New York of April 7th, 1869 (Laws N. Y. 1869, c. 133), it must have attached to it such a certificate as is required by the second section of that statute.

3. Where such an affidavit was entitled, "In the Supreme Court of the State of New York," followed by the names of the parties at full length, and stated that the affiant "is one of the plaintiffs in the suit above-entitled and that he has reason to believe and does believe that, from prejudice and local influence, he will not be able to obtain justice in this court": Held, that such affidavit was a substantial compliance with the provision of the said act of 1867, requiring the party to make an affidavit, stating "that he has reason to and does believe that, from prejudice or local influence, he will not be able to obtain justice in such state court."

[Cited in Fisk v. Henarie, 32 Fed. 421; Whelan v. New York, L. E. & W. R. Co., 35 Fed. 862.]

[At law. Actions of ejectment by Champlain Bowen and others against Nelson Chase and others. Defendants moved to strike the causes from the docket, and plaintiffs moved for a commission. Defendants' motion denied, and plaintiffs' motion as to case No. 3 granted.]

Charles Tracy and Clarence A. Seward, for plaintiffs.

Charles O'Conor and James C. Carter, for defendants.

BLATCHFORD, District Judge. Three of these suits, of which there are four with the same title, are known as Nos. 1, 2 and 4. They, as well as suit No. 3, are actions of

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

ejectment originally brought in the supreme court of the state of New York. On the 30th of October, 1869, the plaintiffs in each suit of those known as Nos. 1, 2 and 4 filed in that court a petition for the removal of the suit into this court, verified by them, and also certain affidavits accompanying the petition, and a bond offered as the surety required on such removal. On the 13th of November, 1869, a motion was made in the state court, in each suit, by the plaintiffs, on notice to the defendants, that the bond be accepted. When the motions came on to be heard, in each case, the petition was read, and the counsel for the plaintiffs then proposed to read the affidavits verifying the petition, and also the other affidavits before-mentioned as accompanying the petition. This was objected to on the part of the defendants, on the ground that none of the affidavits were made or authenticated in such manner as to entitle them to be read. The court sustained the objection, and then made an order in each case reciting the proceedings and dismissing the petition. Notwithstanding this, the plaintiffs have, in each case, filed in the office of the clerk of this court certain papers purporting to be copies of the process, pleadings, depositions, testimony and other proceedings therein, exemplified or certified by the clerk of the state court, and have caused each suit to be docketed in this court, or its title to be entered in the book wherein entries are made of the proceedings taken in causes pending in this court. The defendants, claiming, in each case, that it has not been lawfully removed to this court and is not pending therein, now move that it be stricken from the docket of this court, and that all entries in respect to it be stricken from the books in the office of the clerk of this court, and that the papers so filed be stricken or taken from the files of this court. The plaintiffs, claiming, in each case, that it is pending in this court by removal from the state court, move for a commission to examine certain persons in Rhode Island as witnesses therein.

The removal in these cases was sought to be effected under the act of March 2d, 1867 (14 Stat. 558), which provides as follows: "Where a suit is now pending or may hereafter be brought in any state court, in which there is controversy between a citizen of the state in which the suit is brought and a citizen of another state, and the matter in dispute exceeds the sum of five hundred dollars, exclusive of costs, such citizen of another state, whether he be plaintiff or defendant, if he will make and file in such state court an affidavit stating that he has reason to and does believe that, from prejudice or local influence, he will not be able to obtain justice in such state court, may, at any time before the final hearing or trial of the suit, file a petition in such state court for the removal of the suit into the next circuit court of the United States to be held in the

district where the suit is pending, and offer good and sufficient surety for his entering in such court, on the first day of its session, copies of all process, pleadings, depositions, testimony and other proceedings in said suit, and doing such other appropriate acts as, by the act to which this act is amendatory" (Act July 27, 1866; 14 Stat. 306), "are required to be done upon the removal of a suit into the United States court; and it shall be thereupon the duty of the state court to accept the surety and proceed no further in the suit; and, the said copies being entered as aforesaid in such court of the United States, the suit shall there proceed in the same manner as if it had been brought there by original process."

The only material question for consideration in the view I take of these cases is, as to whether the affidavit accompanying the petition, and purporting to be the affidavit required by the act of 1867, was authenticated in such manner as to entitle it to be used in the state court for the purpose for which it was, under that act, offered to be used. I do not speak of the affidavit verifying the petition. The act does not expressly require the petition to be verified by affidavit. In that respect it differs from the act of March 2d, 1833 (4 Stat. 632), and from the act of March 3d, 1863 (12 Stat. 755), both of which acts expressly require the petition for removal to be verified by affidavit. I confine the inquiry to the affidavit mentioned in the act of 1867. The act requires the affidavit to be made and then to be filed in the state court; and it prescribes what the affidavit shall state.

Although the affidavit is one to be made for the purpose of securing a privilege created by a law of the United States, and although the making of the affidavit is prescribed by a law of the United States, yet the affidavit is one which is to be received and used in a judicial proceeding pending in a state court; and it cannot be doubted that it must be taken and certified, at least in the absence of any controlling statute of the United States, in such manner as the state law may require in respect to the taking and certifying of affidavits to be received and used in the courts of such state. It is not claimed that the affidavits in these cases were taken or certified in conformity with any statute of the United States prescribing the mode of taking or certifying them; and the act of 1867 merely says that the affidavit is to be made and filed in the state court. The affidavits in question were made to be used in the state court. They were made to be filed in the state court, that is, to be received by such court in judicial proceedings therein. Unless the affidavit is so first filed there can be no removal of the suit.

The affidavits here were evidently intended to be taken and certified in conformity with the provisions of the act of the legislature of the state of New York, passed

April 7th, 1869 (Laws N. Y. 1869, c. 133). That act provides as follows: "Section 1. In cases where by law the affidavit of any person residing in another state, or in any territory of the United States, is required or may be received in judicial proceedings in this state, the same may be taken and certified by any officer authorized by the laws of such state or territory to administer oaths and take and certify affidavits to be used in the courts of record of such state or territory. § 2. To entitle such oath or affidavit to be read in the courts of this state, there shall be stated in the body of such affidavit, the name, residence, age and occupation of the deponent or affiant, and there shall be attached to the jurat or affidavit a certificate, under the name and official seal of the clerk, register, prothonotary or other officer authorized by the laws of such other state to make such certificate, of the county in which the officer taking and certifying such oath or affidavit resided, specifying that such officer was, at the time of taking such oath or affidavit, duly authorized to take the same, and that such clerk, register, prothonotary or other officer is well acquainted with the handwriting of such officer, and verily believes that the signature to such jurat or certificate is genuine, and that such oath or affidavit purports to be taken in all respects as required by the laws of such state or territory; and such oath or affidavit so taken and certified may be read in any court or before any officer in any suit or proceeding in this state, with like force and effect as if such oath or affidavit had been taken before any officer authorized by law to take affidavits in this state to be read in courts of record."

The plaintiffs in these cases resided all of them in the state of Rhode Island, and the affidavits were all of them taken in that state. There being several plaintiffs in each case, they did not all unite in one affidavit in each case, but several affidavits were made in each case, each affidavit being made by different plaintiffs. Some of the affidavits in a case were taken by a justice of the peace and some by a public notary. The authority of these officers to take the affidavits, as being officers provided for by the first section of the New York statute of 1869, is not questioned. The difficulty is with the forms of the certificates attached to the affidavits, as not being in the form required by the second section of that statute. In respect to the justice of the peace, the certificates are made by the clerk of the supreme court of Rhode Island within and for the county of Providence. In respect to the public notary, the certificates are made by the clerk of the court of common pleas of Rhode Island within and for the county of Providence. None of the certificates state, as is required by the New York statute, that the clerk making them is well acquainted with the handwriting of the officer taking the affi-

davits, and the certificates in respect to the public notary fail to state that the affidavits taken by him purport to be taken in all respects as required by the laws of Rhode Island. There is nothing in the certificates that amounts in substance to a compliance with the New York statute in these particulars.

There is no question here of any attempt by the state, by legislation, to embarrass the exercise of the privilege of removing a cause into the federal court. The requisitions of the state statute as to the form and contents of the certificate are not unreasonable, and any person seeking to have received or used, in a judicial proceeding in a court of the state of New York, an affidavit made by a person residing in another state, taken by such an officer as is specified in the first section of the New York statute of 1869, must have attached to such affidavit a certificate specifying in substance the particulars required to be specified therein by the second section of that statute; otherwise, the affidavit is not entitled to be received or used in a court of the state of New York. Such was undoubtedly the view of the court which dismissed the petitions, and there is no sound principle on which the correctness of that view can be questioned. It is equally clear, that the affidavit must be one that is entitled to be received or used in the state court, before it can be employed in effectuation of a removal of the suit to the federal court.

It follows, that the motion of the defendants must be granted and the motion of the plaintiffs be denied, as to cases Nos. 1, 2 and 4. As to case No. 3, the proceedings in it, for the removal of the cause, have been the same as those in the three cases of the same title, known as Nos. 1, 2 and 4, with certain exceptions hereafter mentioned, and the same motions are now made in it as in cases Nos. 1, 2 and 4, with the addition, that the defendants move that it be remanded to the state court. On papers in all respects the same as those in cases Nos. 1, 2 and 4, the state court made an order that the prayer of the petition be granted and that such state court proceed no further in the action. The defendants did not, in the state court, take the objections to the forms of the certificates attached to the affidavits, which they took to the forms of the certificates attached to the affidavits in cases Nos. 1, 2 and 4, but expressly waived such objections, and they have expressly waived them in open court, in this court, on these motions. This applies not only to the affidavits provided for by the act of 1867, but also to the verifications of the petitions.

The only ground urged, in case No. 3, for remanding the case to the state court, is, that no one of the plaintiffs states in his affidavit that he "has reason to and does believe that, from prejudice or local influence, he will not be able to obtain justice in

such state court." Each affidavit is entitled thus: "In the supreme court of the state of New York," followed by the names of the parties at full length. The affiant states, that he "is one of the plaintiffs in the suit above entitled," and that he "has reason to believe and does believe that, from prejudice and local influence," he "will not be able to obtain justice in this court." This is a substantial compliance with the act of congress. The motion of the defendants is denied and the motion of the plaintiffs is granted, as to case No. 3.

[NOTE. For the disposition in the supreme court of a bill to establish defendant's title, and to enjoin prosecution of the actions herein, see Bowen v. Chase, 94 U. S. 812; and, for the final disposition of one of the actions herein, see 98 U. S. 254.]

## Case No. 1,721.

### BOWEN v. CLARK.

[1 Biss. 128;[1] 5 Am. Law Reg. 203.]

District Court, D. Wisconsin. Nov. Term, 1856.

#### ASSIGNMENT FOR BENEFIT OF CREDITORS.

1. An assignment with preferences, made by two members of a firm, in the absence and without the knowledge or consent of the third, who had previously refused to give preference to any creditors, is not valid as to him.
    [See Marsh v. Bennett, Case No. 9,110; In re Lawrence, 5 Fed. 349; Halsey v. Fairbanks, Case No. 5,964; and see note at end of case.]

2. He having repudiated the assignment, and with the aid of his partners and a mortgagee of a portion of the property regained possession of it, this court will not entertain a bill by preferred creditors to compel redelivery to the assignee.

3. Although in Wisconsin a mortgage of a retail stock, not duly filed, or accompanied with delivery of possession, is void as to creditors, a bill by preferred creditors against the mortgagors and the mortgagee, who is equally preferred will not lie unless the mortgagee claims payment in full to their prejudice.

4. Where the principal assigning partner was, at the time of the execution of the assignment, laboring under the immediate effects of intoxication, well known to the assignee and the agent of the creditors procuring the assignment, the transaction will not be favored in a court of equity.
    [See Johnson v. Harmon, 94 U. S. 371.]

In equity.

Joseph A. Sleeper and Finch & Lynde, for complainants.

Bennett & Sloan, for defendants.

MILLER, District Judge. This bill is filed by two firms,—Bowen & McNamee, and Sachett, Belchor & Co., of New York, who are creditors of the firm of H. O. Clark & Co., which was composed of Clark, Smith and Justin. This firm being largely indebt-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

ed, on the third day of July, 1854, an assignment of their stock in trade and choses in action and effects was made to Stevens in trust. The assignment is in the form of an indenture between Clark, Smith & Justin, partners, under the name, style and firm of H. O. Clark & Co., party of the first part, and Charles Stevens of the second part, and it is signed, with seals annexed; H. O. Clark, Ira Justin, A. Hyatt Smith by H. O. Clark, his partner, H. O. Clark & Co., Charles Stevens. The trust created is to convert all the assigned property into cash, and first to pay in full the claims and demands of Miller, A. Clark, Brewster and the two firms, complainants, and then all the remaining partnership debts, pro rata.

On the 19th of May, previous to the date of the assignment, Clark, Justin and Smith, by their attorney, Clark, under their respective seals, executed to Brewster a chattel mortgage of all their stock in trade in their store in Janesville, to secure the payment in six months of the nominal sum of $16,000, with a schedule of the goods annexed. This mortgage was to secure money loaned and to be loaned, as it might from time to time be required. The mortgage provides that "until default be made in the payment of the aforesaid sum of money, the party of first part to remain in quiet and peaceable possession of the said goods and chattels, and in the full and free enjoyment of the same, and until such demand be made, the possession of the party of the first part shall be deemed the possession of an agent or servant for the sole benefit and advantage of his principal, the party of the second part." Smith intending to be absent at Washington, had given to Clark a general power of attorney to transact his business in his absence. He was at Washington when the mortgage and assignment were executed.

In the month of June the firm of H. O. Clark & Co. transferred these goods and their book accounts and effects to Miller, and took his notes for the consideration, but in a few days after, this sale was rescinded, and the property was returned to the firm. In the meantime, Gilkison, the agent of Bowen & McNamee, in the presence of Clark, urged Smith, who was then at Janesville, for security, which Smith declined. He was not willing to distinguish between or give preferences to any creditors of the firm. Clark and Justin were the active members of the firm, particularly Clark, and on Smith the credit principally depended. Clark had been drinking for two days before the execution of the assignment, with the knowledge of the plaintiff's agent and of the assignee. And about the middle of the day, after he had slept off his intoxication, he, in their presence, examined the assignment and suggested the creditors to be preferred. He knew what he was doing, but the assignee thought he had better sign the paper before he got another drink.

Immediately after the execution of the assignment, the assignee took possession, and he continued in possession—selling goods at retail and collecting debts—until the thirteenth day of August. When the assignment was executed and the assignee was placed in possession, Brewster was absent. After Smith returned from Washington, he repudiated the assignment, and gave notice of it to the assignee, and he and the other members of the firm, with Brewster, the mortgagee, demanded of the assignee, and, on the thirteenth day of August, took the assigned property from the assignee, without opposition on his part, and he refuses to bring suit for the property, or its value, without indemnity against costs and expenses. While he had the property in his possession, he realized by sales and collections four thousand dollars. All the remaining property embraced in the assignment ·was taken from the assignee, he having united the stock .of another store with the mortgaged stock in the Janesville store.

This suit is brought to enjoin the several members of the firm and Brewster, from using, selling, or disposing of the property embraced in the assignment, and to compel them to deliver said property to the assignee, so that he may proceed in the execution of the trust, and to account, and that the chattel mortgage to Brewster be decreed to be fraudulent and void.

It is well understood that a mortgage may be made to secure future advances, when this is a constituent part of the original agreement, and so recited. This mortgage did not contain such recital. What portion of the sum of sixteen thousand dollars had been advanced, or was owing, at the date of the assignment, is immaterial at this time.

By the statute law of this state, a mortgage of personal property is not valid against any other persons than the parties thereto, unless possession of the mortgaged property be delivered to, and retained by the mortgagee, or unless the mortgage be filed in the office of the town clerk. This mortgage was so filed. But this is a mortgage of a retail store—the mortgagors continuing in possession, treating the property as their own, and retailing from day to day. By every sale and fresh supply, the mortgaged goods changed their identity. I have no doubt such mortgages are fraudulent as to creditors, and void as against executions and attachments. . Whether the power of disposition exists on the face of the mortgage, or is so understood, or agreed between the parties at the time the mortgage is executed, or is fairly to be inferred from its provisions, it is equally void, although it may be filed with the clerk according to the statute. It is to be considered and treated as a means of hindering or delaying creditors. Griswold v. Sheldon, 4 Comst. [4 N. Y.] 581; Freeman v. Rawson [5 Ohio 1]; Jordan v. Turner, 3 Blackf. 309.

But this is not a proceeding of attachment or execution on the part of the creditors claiming adversely to the assignment. These plaintiffs claim under the assignment as preferred creditors, equally with Brewster the mortgagee. The demands of the preferred creditors are not specified in the assignment, but their whole amounts are to be first paid, or, in case of a deficit of assets, they are to be paid pro rata. These plaintiffs are not in a situation, at present, to contest the validity of the mortgage. Unless there be a deficit of assets, and Brewster claims payment in full, under his mortgage, to their prejudice, the validity of the mortgage cannot be questioned by them. The repudiation of the assignment, and the reclamation of the property, with the aid of Brewster, do not enable the plaintiffs to question the validity of the mortgage of a creditor equally preferred with themselves. By re-possessing themselves of the property, these parties made themselves trustees for the creditors, and they are bound to account, if the assignment is valid and effectual and should be enforced in a court of equity. The assignment is signed by Clark as partner of Smith, not as attorney in fact, as the mortgage is signed. The power of attorney is not referred to, and it does not appear on its face to have been intended as an authority to Clark to execute the assignment, nor was it so considered by the parties.

It is a consequence of a partnership that each acting partner is a general agent of the firm,—that is, has an implied authority to act for the firm, in all business within the scope of the business transacted by it. In all that a firm has undertaken to do, or usually does, an acting partner is identified with the company. In the case of Rogers v. Batchelor, 12 Pet. [37 U. S.] 221, Mr. Justice Story remarks: "The implied authority of each partner to dispose of the partnership funds strictly and rightfully extends only to the business and transactions of the partnership itself, and any disposition of those funds by any partner, beyond such purposes, is an excess of his authority as partner, and a misappropriation of those funds for which the partner is responsible to the partnership; though in the case of bona fide purchasers, without notice for a valuable consideration, a partnership may be barred by such acts. Whatever acts, therefore, are done by any partner in regard to partnership property, or contracts beyond the scope and objects of the partnership, must, in general, in order to bind the partnership, be derived from some further authority, express or implied, conferred upon such partner, beyond that resulting from his character as partner." One partner can, in the name of the firm, replenish the stock in trade, and even sell or dispose of it, in the usual course of the business. He can dispose of an article of the stock in trade in payment of a debt of the firm. He can mortgage the stock or dispose

of a portion of it, to raise funds to preserve the credit, or to pay debts of the firm.

In the absence of a co-partner from the country, the acting partner may assign to a trustee for certain creditors of the firm, the cargo of a certain ship, and of certain debts, to raise funds in aid of the credit of the firm (Harrison v. Sterry, 5 Cranch [9 U. S.] 289); and under like circumstances, in the absence of one partner from the country who could not be consulted, an assignment of the whole property of the concern, by one partner, was held valid by Marshall, C. J., in Anderson v. Tompkins [Case No. 365]. From the opinion in that case, it may be inferred that the Chief Justice was of the opinion, that the authority of the acting partner in this respect was unlimited, but there is no doubt that the fact of the absence of the partner in England controlled the decision, as he remarked, "It is true Murray (the absent partner) had a right to be consulted; had he been present, he ought to have been consulted. The act ought to have been, and probably would have been a joint act, but Murray was not present. He had left the country and could not be consulted. He had by leaving the country confided everything which respected their joint business, to Tompkins, who was under the necessity of acting alone." In the case of Pearpoint v. Graham [Id. 10,877], Mr. Justice Washington remarked, that, "It may admit of serious doubt, whether one partner can, without the consent of his associate, assign the whole of the partnership effects otherwise than in the course of trade, in which the firm is engaged in such manner as to terminate the partnership. His assignment of all the effects to trustees for the benefit of the creditors of the concern, would seem emphatically to be of this character. Such is the obvious design, and such must be its necessary consequences;" and Mr. Justice Story, in his work on Partnership (section 101, note), on a review of the cases, concludes, that there is no small difficulty in supporting the doctrine even under qualifications, that one partner may make a general assignment of all the partnership property.

The authority in a single partner to dispose of partnership property is not an inseparable legal consequence of an interest in the partnership, but is an actual agency, implied from the supposed assent of the other members; an express notice, therefore, from one member of the firm, that he will not be bound by the act of another partner puts a stop to the implied authority. See 1 Am. Lead. Cas. 292, and cases cited. This agency does not exist where the partners are present. or can be consulted. In Anderson v. Tompkins [supra], it is asserted that "this power would certainly not be exercised in the presence of a partner without consulting him, and if it were so exercised, slight circumstances would be sufficient to render the transaction suspicious, and perhaps to fix

upon it the imputation of fraud. In this respect, every case must depend upon its own circumstances." In Deckard. v. Case, 5 Watts, 22, an assignment by one partner directly to certain creditors to pay debts of the firm, after the other partner had left the country, was sustained, on the principle of an implied power of a partner to dispose of the whole partnership effects, as held in Mills v. Barber, 4 Day, 428, and in McCullough v. Sommerville, 8 Leigh, 415, and other cases; but the peculiar facts of such cases were urged in support of the decision. In Hennessy v. Western Bank, 6 Watts & S. 300, the same principle was maintained in the case of a general assignment, with preferences, of partnership effects to trustees, executed by two of three partners, in the absence from the country of the third partner; but the absence and a power of attorney of the third party are recited as the authority under which they executed the assignment. But in the case of Deckert v. Filbert, 3 Watts & S. 454, it is decided that one of a firm has not power to make an assignment of the effects of the partnership for the benefit of creditors, against the express dissent of his co-partner. That assignment was made after the dissolution of the partnership by advertisement, but the dissent of the non-assigning partner was the ground of the decision. See, also, Kirby v. Ingersoll, Har. [Mich.] Ch. 172; [Hughes v. Ellison, 5 Mo. 463];[2] Drake v. Rogers, 6 Mo. 317. In Hitchcock v. St. John, 1 Hoff. [Ch.] 511, the assignment was made in New York, while the absent partner was in Georgia, and it was declared void. In Dana v. Lull, 17 Vt. 390, the assignment was declared void, for being made by one partner, who had the superintendence and care of the business, while the other partner, who resided in a different part of the state, was absent, and was not consulted. In Deming v. Colt, 3 Sandf. 284, and in Hayes v. Heyer, Id., assignments made by one partner without the knowledge or assent of the other partner, who was present, or might have been consulted, were adjudged void. So, also in Havens v. Hussey, 5 Paige, 30, an assignment to a trustee, for the benefit of creditors giving preferences of the stock in trade by one partner, while the other was objecting to it, was adjudged to be fraudulent as to that partner, and void. The chancellor expressed his satisfaction, "that such an assignment is both illegal and inequitable, and cannot be sustained."

The principle upon which an assignment by one partner in payment of a partnership debt rests, is that there is an implied authority for that purpose from his co-partner, from the very nature of the contract of partnership, the payment of the company debts being always a part of the necessary business of the firm. And while either party acts fairly within the limits of such implied

---

[2] [Citation from 5 Am. Law Reg. 203.]

authority, his contracts are valid and binding on his co-partner. One member of a firm, therefore, without any express authority from the other, may discharge a partnership debt, either by the payment of money, or by the transfer to the creditor of any of the partnership effects, although there may not be sufficient left to pay an equal amount to the other creditors of the firm. But it is no part of the ordinary business of a co-partnership to appoint a trustee of all the partnership effects, for the purpose of selling and distributing the proceeds among the creditors in equal proportions. And no such authority as that can be implied. And in Fisher v. Murray [1 E. D. Smith (N. Y.) 341] it was held that to support an assignment of the whole of the partnership property to a trustee, for the payment of debts by one partner or any number short of the whole, even without preferences, it must be shown that it was made under circumstances that rendered it impossible to consult the other partners, or from their acts or declarations, either before or subsequent thereto, it must appear that it was executed with their assent, or by their authority.

The court of errors of New York in the case of Mabbett v. White, 2 Kern. [12 N. Y.] 442, by a vote of five judges to two, expressed the opinion of the majority, that one partner had authority to sell and transfer all the co-partnership effects directly to a creditor of the firm in payment of a debt, without the knowledge or consent of his co-partner, although the latter is at the place of business of the firm, and might be consulted, and that such transfer is valid, although the firm is insolvent, and thereby one creditor acquires a preference over the other creditors of the firm. This was in fact a controversy at law between creditors of the firm, and there was evidence, although contradictory, of the subsequent assent of the non-assenting partner. That decision virtually rejects the principle of implied agency, and in my opinion, it can only be sustained, if at all, upon the ground which was not stated by the majority, that in a controversy at law between creditors, one creditor cannot object to the validity of such an assignment to another creditor, but that the non-assigning partner alone can make the objection. Such is the law, in case of a judgment confessed by one partner against himself and his co-partners. The judgment is valid until reversed or set aside at the instance of the non-confessing partners, and a like sale under execution issued on such a judgment will vest a good title in the purchaser of the partnership property. Nor can third persons or creditors object to such judgment or sale. Grier v. Hood, 1 Casey [25 Pa. St.], 430.

From an examination of the cases, it will be found that some peculiar and controlling circumstance influenced the decision. A distinction seems to exist in some of the cases between assignments directly to creditors in discharge of debts, and assignments to trustees, giving preferences to creditors. And if such distinction really exists, then there should be a difference in the effect given to the one in a suit at law between creditors, and to the other in a case of equity, by a preferred creditor against the non-assigning partner.

The property of a co-partnership upon the insolvency of the firm is considered in equity as a trust fund for the payment of the partnership creditors generally, and equity should be slow to enforce an assignment at the hands of a preferred creditor. A court of equity will readily enforce the trust and grant relief in cases where the assignment is for the creditors generally, upon the favorite maxim that equality is equity. This principle of equality has always been a favorite with a court of equity, but it has not been adopted as a principle of the common law. This inequitable principle of the common law is, however, being modified by legislation. In the two great commercial states of New York and Pennsylvania, assignments with preferences to creditors are now prohibited by statute, and no doubt the prohibition will become general. Such assignments have only been tolerated upon the principle that the owner of the property has a right to make disposition of it in payment of his debts. The courts require that all assignments should be fair and bona fide, and not tainted in the smallest degree with fraud, and even then, such as give a preference to a creditor or creditors are not favored in a court of equity.

The principle to be extracted from nearly all the decisions, appears to be this, "that as a general assignment, if it does not dissolve the partnership, it at least takes away from the partners the right of disposing of the effects assigned, all the members, if they are present, have a right to be consulted on such a step; that an assignment by one partner against the known wishes of another would be a fraud upon him and invalid, and an assignment without his knowledge would be presumptively so. But if one partner has left the country, he must be considered as having vested in the other implied authority to act in all matters for the benefit of the firm, and an assignment under such circumstances, if fairly made and beneficial to the interests of the company, will be sustained." 1 Am. Lead. Cas. 444. Smith was not absent from the country, but he was at Washington, where he might have been written to, or seen personally in four days, or telegraphed to in one day. Especially was this the duty of the agent of the plaintiffs, and Clark, as they had full notice from him of his objection to preferring any of the creditors of the firm. Smith's assent to the assignment was essential, under the circumstances, to its validity as to him. If he, on his return, had acquiesced in the assignment, he would be bound by it; but, on the

contrary, he gave notice of his dissent to the assignee, and carried it out, with the aid of his co-partners and of the mortgagee, by regaining possession of the property. When Smith objected to giving these creditors security in preference to others, the property was in the possession of Miller, but the firm had then the avails of the sale to Miller, whatever they were. The return of the property by Miller to the firm does not vary the matter in the least, or justify the presumption, that Smith had come to any different conclusion upon the subject of a preference.

The assignment is valid as to Justin. And Clark's intoxication is not established by the proof to an extent that should authorize the court to pronounce the assignment void as to him. When he executed the assignment he knew what he was doing; he was not deprived of his reason or understanding. "Courts of equity as a matter of public policy, do not incline on the one hand to lend their assistance to a person who has obtained an agreement or deed from another in a state of intoxication, and on the other hand, they are equally unwilling to assist the intoxicated party to get rid of his agreement or deed, merely on the ground of his intoxication at the time. They will leave the parties to their ordinary remedies at law, unless there is some fraudulent contrivance or some imposition practiced." 1 Story, Eq. Jur. § 231.

It is not satisfactorily proved that imposition was practiced upon Clark by the plaintiff's agent, who procured the assignment, but he and the assignee had full knowledge of Clark's intoxication while the assignment was being written, and that he was laboring under its immediate effects at the time of its execution. They knew that Clark was acting in the matter for Smith, as well as for himself, and with due regard for the interests of Smith, they should have postponed the execution of the assignment until it could be done with care and deliberation, by a sober man. If this circumstance is not sufficient to fix upon the transaction the imputation of fraud, it is suspicious, and should not be favored in a court of equity. My opinion is that the complainants have not a proper case for equitable interposition by this court, and that the bill should be dismissed.

NOTE [from original report]. For an extended discussion of the doctrine of assignments for the benefit of creditors, see opinion of Story, J., in Halsey v. Whitney [Case No. 5,964]. See, also, McGregor v. Ellis, 2 Disn. 286; Graves v. Hall, 32 Tex. 665. One partner has no authority to make a general assignment of partnership property (Stein v. La Dow, 13 Minn. 416 [Gil. 381]; Hughes v. Ellison, 5 Mo. 463; Ormsbee v. Davis, 5 R. I. 442; Pettee v. Orser, 18 How. Pr. 452; Wilson v. Soper, 13 B. Mon. 411; Fisher v. Murray, 1 E. D. Smith, 341; Kemp v. Carnley, 3 Duer, 1), not even though the other partner be absent from the state (Hook v. Stone, 34 Mo. 329). On the application of non-consenting partner, a receiver will be appointed. Wetter v. Schlieper, 6 Abb. Pr. 123. It has been held, however, that under certain circumstances one partner might make a valid assignment of partnership property for the benefit of creditors, without preference. Lamb v. Durant, 12 Mass. 54; Robinson v. Crowder, 4 McCord, 519; Mills v. Barber, 4 Day, 428. And in Forkner v. Stuart, 6 Grat. 197, it was held that a sale by one partner to a bona fide purchaser is valid though it convey the whole stock.